**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
RUSSELL "ANGEL" WHITAKER,

                              Plaintiff,               **COMPLAINT**

                    -against-

AMAZON.COM SERVICES LLC,          **Case No. 1:22-cv-10222**

and                                    **PLAINTIFF DEMANDS**
                                        **A TRIAL BY JURY**
JUSJORXPRESS LLC,

                              Defendants.
-----------------------------------------------------------X

        Plaintiff RUSSELL "ANGEL" WHITAKER, by and through her attorneys PHILLIPS & ASSOCIATES ATTORNEYS AT LAW, PLLC, hereby complains of the Defendants, AMAZON.COM SERVICES LLC AND JUSTJORXPRESS LLC, upon information and belief as follows:

## NATURE OF THE CASE

1.    Plaintiff brings this action alleging that the Defendant has violated the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq*., as amended, ("ADA"), the New York State Human Rights Law, New York State Executive Law §§ 290 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, New York City Administrative Code §§ 8-107 *et seq*. ("NYCHRL"), and seeks damages to redress the injuries she has suffered as a result of being discriminated against on the basis of her disability, not granted a reasonable accommodation, retaliated against, and being unlawfully terminated from her job.

## JURISDICTION AND VENUE

2.    Jurisdiction of this Court is proper under 42 U.S.C. §§ 12101 *et seq*., and 28 U.S.C. §§

1331 and 1343.

3.  The Court has supplemental jurisdiction over Plaintiff's claims brought under state and city law pursuant to 28 U.S.C. § 1367.

4.  Venue is proper in this district, pursuant to 28 U.S.C. § 1391(b), as it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## PROCEDURAL PREREQUISITES

5.  Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on February 1, 2022.

6.  Plaintiff received a Notice of Right to Sue from the EEOC on September 2, 2022 and this action is being commenced within 90 days of its issuance.  A copy of the Notice is annexed hereto as **Exhibit A.**

7.  Notice requirements of § 8-502 of the New York City Administrative Code have been met by the contemporaneous transmission of this Complaint, to the New York City Commission of Human Rights ("NYCCHR") and the Office of the Corporation Counsel of the City of New York. A copy of the transmittal letter to the NYCCHR, *et ano.*, is annexed hereto as **Exhibit B**.

## PARTIES

8.  Plaintiff, Russell "Angel" Whitaker ("Angel"), is a 22-year-old transgender female who resides in Manhattan, New York.

9.  Plaintiff is also a person with Autism Spectrum Disorder ("ASD").

10.  ASD is a disability that affects the major bodily function of the brain.

11.  Due to ASD, Plaintiff's abilities to interact with others and communicate with others, major life activities, are substantially impacted.

12. The learning, thinking, and communication abilities of people with ASD can range from gifted to severely challenged. Plaintiff is considered "high-functioning" in these major life activities.

13. Defendant Amazon.com Services LLC ("Amazon") is a foreign business corporation registered to do business in the State of New York.

14. Defendant Amazon is an American multinational internet-based company that is reportedly the largest online retailer in the world outside of China. Amazon has a corporate location at 450 West 33rd Street, New York, New York.

15. At all relevant times, Defendant Amazon employed at least 15 employees.

16. At all relevant times, Defendant Amazon was an employer within the meaning of Title VII, the NYSHRL, and the NYCHRL.

17. Defendant JusJorXpress, LLC ("JusJor") is a Foreign Limited Liability Company registered to do business in the State of New York.

18. Defendant JusJor, an interstate freight carrier, maintains a principal place of business at 1510 Union County Pkwy, Union, New Jersey.

19. At all relevant times, Defendant JusJor employed at least 15 employees.

20. At all relevant times, Defendant JusJor was an employer within the meaning of Title VII, the NYSHRL, and the NYCHRL.

21. Defendants Amazon and JusJor are joint employers for purposes of this action. As such, they share or co-determine the terms, conditions, and privileges of Plaintiff's employment.

22. While Defendant JusJor paid Plaintiff and directed her work location, Defendant Amazon determined policies, procedures and conditions of employment which directly affected Plaintiff's working conditions that led to her termination.

23.     Defendants Amazon and JusJor are collectively referred to as "Defendants."

24.     At all relevant times, Plaintiff was employed by Defendants.

25.     At all relevant times, Plaintiff could perform the essential functions of her job with or without an accommodation.

## MATERIAL FACTS

26.     Defendant JusJor is an Amazon Delivery Service Partner ("DSP") providing package delivery service for Amazon in the Manhattan, New York area.

27.     On or around November 16, 2021, Plaintiff was interviewed for the position of Walker (also known as a Foot Delivery Courier) to deliver Amazon packages in Manhattan, New York.

28.     **Present on Plaintiff's virtual interview session was a person (name unknown) from Grant Associates, Inc. The interviewees were directed to contact this person via email if they had any follow-up questions about the job.**

29.     **Plaintiff emailed this person after the interview, stating:**

> **Hi again this is me Angel I want to say that I really appreciated being in the interview session today. I do have a question. I have a developmental disability, and can I receive accommodations; so that way I can work efficiently like my other team members?  Sincerely, Angel Whitaker**

30.     **Plaintiff did not receive any response to this first disability-related accommodation request.**

31.     On November 18, 2021, Plaintiff was texted "Instructions for Training." The message informed her of the address to report to and stated that when she arrived, she must, "Let the employees know that you are there for Amazon training…"

32.     Plaintiff was notified of her hire by Amazon the next day, November 19, 2021, via an email from Amazon.com.

33.   Copied on the hiring email from Amazon is Davis Jean-Louis ("Davis"). Davis has an Amazon email address, and upon information and belief, is an employee of Amazon. Davis is also the Founder and CEO of JusJor. Davis, as a joint-employee of both Defendants, figures prominently as a decisionmaker in Plaintiff's termination, as detailed in paragraph 64 below.

34.   The hiring email from Amazon also details Amazon's mandatory requirements related to COVID protocols at its work sites and training facilities.  It also states in relevant part, "If you need a medical accommodation related to this requirement, please contact your DSP who must engage in the interactive accommodation process with Amazon."

35.   Lastly, the hiring email ends with: "We look forward to working with you! Sincerely, The Amazon Logistics Team."

36.   Plaintiff was hired as a full-time permanent employee, at a rate of $16.00 per hour regular time and $22.50 per hour for overtime.

37.   As a Walker, Plaintiff duties entailed delivering Amazon packages to homes and businesses in Manhattan, New York.

38.   Plaintiff's first day on the job, November 23, 2021, was devoted to training. Plaintiff learned to use the hand-held scanner, called the "Rabbit," and was instructed that it was important to "just keep moving" (i.e., keep delivering packages).

39.   Working from an assigned delivery truck called the "Anchor Station," Plaintiff would be assigned a large plastic tote full of packages to be delivered, often inside large residential and commercial buildings. Packages were tracked and verified on the Rabbit.

40.   At all times during her employment, Plaintiff wore the uniform provided to her, which had the Amazon logo printed on it, and worked from a delivery truck with Amazon's logo

emblazoned on both sides.

41.    Plaintiff held the good faith belief that she was working for Amazon.

42.    During each shift, Plaintiff worked with Defendants' Delivery Driver and approximately 10 other Walkers.

43.    The Delivery Driver ("Driver") Plaintiff was assigned to (name unknown) had the authority to hire, fire, or affect the terms and conditions of Plaintiff's employment, or to otherwise influence the decisionmaker of the same.

44.    On or around the first day of work, The Driver told the Walkers, in sum and substance, "I don't want to be out here late."

45.    Upon information and belief, Defendant Amazon directly sets the allocation of packages delivered, impacting working hours and schedules of Defendant JurJor's employees. Failure to comply results in recourse up to and including the termination of its contract.

46.    From the point of hire up to December 3, 2021, Plaintiff was capably performing the duties of the job. She arrived at her assigned post on time, did not have any packages lost or damaged, received no customer complaints, and completed her deliveries each day.

47.    Plaintiff worked similarly to her other co-workers without disabilities with the addition of her needing to sort and organize her deliveries in a specific, linear manner that made sense to Plaintiff.

48.    Plaintiff was unaware of any performance issues she had and was not told she had any performance issues up to the last day she worked.

49.    On that day, December 3, 2021, Plaintiff began her deliveries as usual that morning. However, for reason unknown, the Driver told her to return to the Anchor Station after just a few hours.

50. Plaintiff did not immediately return, because she thought it important to follow the original instruction to "just keep moving," and get her deliveries done first.

51. This miscommunication regarding priorities was partially related to Plaintiff's disability, Autism, and would not have occurred if her accommodation request had been granted.

52. Approximately an hour later, the Driver called her and chastised her harshly, upset that she did not return quickly as he instructed and telling her that she was taking too long on the deliveries.

**53. Plaintiff explained to the driver that she didn't want to be taking too long, but that, due to her Autism, she does work differently.**

**54. The Driver told Plaintiff in a dismissive and condescending tone, in sum and substance, "You are just making up excuses."**

55. As Plaintiff continued her deliveries that day, she experienced difficulties due to the malfunctioning of her Rabbit, which, on information and belief, is not an unusual occurrence.

56. At approximately 5:00 p.m. that day, the driver called her again to ask about her delivery progress. Plaintiff explained the problems she was having with the Rabbit. The Driver told her to return to the truck immediately with her undelivered packages, which she did.

57. December 3, 2021 was the first and only occasion that Plaintiff did not complete all of her assigned deliveries and the first time she was told she was doing something wrong.

**58. Feeling shaken, confused, and upset, Plaintiff called Human Resources ("HR") when she returned home. She spoke with Justin Jean-Louis ("Justin"), explaining that she had had a difficult day.**

**59. Plaintiff described the events and complained about what the Driver said to Plaintiff.**

**She also told Justin, in sum and substance, that she had Autism and thinks differently than others, in a more literal and linear manner, but that she knew she could do the job with additional support and assistance as an accommodation.**

60.   Plaintiff's complaint about the discriminatory treatment and the request for an accommodation are protected activities.

**61.   Justin acknowledged his understanding of the issue and told Plaintiff, in sum and substance, that he was going to "echo" the accommodations she needed to those "above him."**

62.   The next day, December 4, 2021, at approximately 10:15 a.m., Plaintiff texted Emil Cherian, that she had not yet received the daily notification telling her where to report for work.

63.   Emil Cherian, Operations Manager, was Plaintiff's direct supervisor and had the authority to hire, fire, or affect the terms and conditions of Plaintiff's employment.

64.   Davis (last name unknown) ("D"), responded at 10:45 a.m. and the following text exchange with Plaintiff ("PL") ensued:

> D:     Good morning we cannot continue to schedule you? You haven't demonstrated that you're capable of meeting the basic expectations of the job. You will receive your final paycheck next week. All the best.
>
> Pl:    **May I explain**
>
> **Please**
>
> **I am capable of it because I come in the work everyday, I make sure that all of the deliveries are made. I push myself as hard as I could to get the job done. All though I do have weakness it takes time for me to process.**
>
> **I have autism I work differently then others at the same time I express at work how much I really care about my company and what I do. I need support I need help. Because I really thought that I really was doing the right thing. All I could do is keep moving and try to do better everyday.**

> D:      Unfortunately, this job is very decentralized and we don't have the resources to provide you the help you need. The customers have a certain time that they expect to receive their packages and our job is to make sure it happens.

> Pl:      Have any customers had any complaints packages that I was responsible to deliver? I need to know that. Is there documentation to support that?

> D:      I'm preventing it from getting to that point, but we have your co-workers and drivers complaining about waiting forever for you and then the other walkers have to do far more than you do and get paid the same. This is not the job for you.

65. Davis, upon information and belief, and according to his email address, is an employee of Amazon.

66. **Plaintiff had notified Defendants of her Autism and requested accommodations for it on *four* separate occasions, specifically, to assist her in ensuring she was performing her job at the most effective level. On no occasion did Defendants engage in an interactive process with Plaintiff to discuss those accommodations, or attempt to implement any accommodation, before abruptly terminating her.**

67. Plaintiff was emotionally devasted by her unjust and illegal termination.

68. Plaintiff liked her job. She felt proud, happy, and accomplished at the end of each day.

69. Plaintiff's termination was because of her disability, Autism, and in retaliation for her complaint of discrimination and request for an accommodation.

70. Plaintiff informed Defendants of her disability and requested an accommodation on at least four occasions: 1) immediately after her interview, 2) to the driver, 3) to Human Resources, 4) and to Davis.

71. Defendants corresponding response to each time she disclosed her disability and made her accommodation request was to 1) ignore her with no response at all, 2) mock her, 3) fail to effectively address the request or engage in an interactive process to explore the assistance

requested, 4) terminate her.

72.   Plaintiff was able to perform the essential function of the job – deliver packages without error – with or without a reasonable accommodation.

73.   Upon information and belief, other Walkers reported to work late or were absent, delivered packages to the wrong address, and damaged packages during delivery and were not terminated.

74.   Plaintiff would have benefited from accommodations such as additional training, enhanced communication regarding priorities, and instruction on methods and specific time frames for delivery. These accommodations would not have resulted in an undue burden for Defendants.

75.   Defendants failed to engage in any interactive process to explore and assess these or any other accommodations.

76.   At all relevant times, Plaintiff was an individual with a disability within the meaning of the ADA, NYSHRL, and NYCHRL.

77.   At all relevant times, Plaintiff was a qualified individual with a disability who could perform the essential functions of her job with or without a reasonable accommodation as defined by § 12111(8) of the ADA.

78.   At all times relevant, Plaintiff had a disability which substantially limits the major life activity of communicating and interacting with others.

79.   Defendant Amazon is an employer subject to the ADA, NYSHRL, and NYCHRL.

80.   Defendant JusJor is an employer subject to the ADA, NYSHRL, and NYCHRL.

81.   Defendants are joint employers for the purposes of this action.

82.   Defendant Amazon controls the policies which determine the terms and conditions that

Defendant JusJor employees must comply with. For instance, Defendant JusJor's adherence to these policies can result in bonuses and non-adherence can result in punitive fee assessments or termination of its contract.

83. Defendant Amazon's policies by which Defendant JusJor employees must abide include those related to training, grooming, social-media posts, methods of delivery, delivery quotas, and drug testing.

84. Defendant JurJor holds itself out to customers and employees as being Amazon as evidenced by its use of Amazon branded employee uniforms and Amazon branded delivery vehicles that served as the work facility.

85. Defendants' unlawful actions and conduct were intentional and aimed at harming Plaintiff.

86. As a result of the acts and conduct complained of herein, Plaintiff has suffered a loss of income, the loss of a salary, bonus, benefits, and other compensation, which such employment entails.

87. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

88. Plaintiff has experienced severe emotional distress from being treated in a discriminatory manner by Defendants.

89. As a result of the above, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of the Court.

90. Defendants' conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.

91. As such, Plaintiff demands punitive damages against Defendants.

## AS A FIRST CAUSE OF ACTION
## DISCRIMINATION UNDER THE ADA

92.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

93.   Plaintiff claims Defendants violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336), as amended, as these titles appear in volume 42 of the United States Code, beginning at Section 12101.

94.   Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112 "Discrimination" states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

95.   Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff, failing to accommodate her, and terminating her because of her disability.

### AS A SECOND CAUSE OF ACTION
### RETALIATION UNDER THE ADA

96.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

**97.**   42 U.S.C. § 2000e-3(a) states that it shall be an unlawful employment practice for an employer:

> (1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, …

98.   The above section forbids retaliation for engaging in protected activity.

99.   Defendants engaged in unlawful discriminatory practices by terminating Plaintiff because she requested a reasonable accommodation for her disability and complained of

discrimination, protected activities, under the law.

**AS A THIRD CAUSE OF ACTION**
**DISCRIMINATION UNDER THE NYSHRL**

100.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this Complaint.

101.    The New York State Executive Law § 296(1)(a) provides that,

> It shall be an unlawful discriminatory practice: For an employer …
> because of an individual's … disability… to refuse to hire or employ
> or to bar or to discharge from employment such individual or to
> discriminate against such individual in compensation or in terms,
> conditions or privileges of employment.

102.    Defendants engaged in unlawful discriminatory practices in violation of the New York

State Executive Law § 296(1)(a) by discriminating against Plaintiff, failing to

accommodate her, and terminating her because of her disability.

**AS A FOURTH CAUSE OF ACTION**
**RETALIATION UNDER THE NYSHRL**

103.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this Complaint.

104.    The New York State Executive Law § 296(1) (e) and (h) forbid retaliation for engaging in

protected activity.

105.    Defendants engaged unlawful discriminatory practices in violation of the New York State

Executive Law § 296(1)(e) and (h) by terminating Plaintiff because she requested a

reasonable accommodation for her disability and complained of discrimination, protected

activities under the law.

**AS A FIFTH CAUSE OF ACTION**
**DISCRIMINATION UNDER THE NYCHRL**

106.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this Complaint.

107.    The Administrative Code of City of NY § 8-107 [1] provides that,

> It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived…disability…to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

108.    Defendants engaged in unlawful discriminatory practices in violation of the New York State Executive Law § 296(1)(a) by discriminating against Plaintiff, failing to accommodate her, and terminating her because of her disability.

## AS A SIXTH CAUSE OF ACTION
## RETALIATION UNDER THE NYCHRL

109.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

110.    The Administrative Code of City of NY § 8-107 (6) forbids retaliation for engaging in protected activity.

89.    Defendants engaged in an unlawful discriminatory practice by terminating Plaintiff because she requested a reasonable accommodation for her disability, and complained of discrimination, protected activities under the law.

## JURY DEMAND

111.    Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A.    Declaring that Defendants engaged in unlawful employment practices prohibited by the ADA, the NYSHRL, and the NYCHRL, by discriminating against Plaintiff on the basis of

14

her disability.

B.     Awarding damages to the Plaintiff, retroactive to the date of her discharge for all lost wages and benefits resulting from Defendants' unlawful retaliation and termination of her employment and to otherwise make her whole for any losses suffered as a result of such unlawful employment practice;

C.     Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D.     Awarding Plaintiff punitive damages;

E.     Awarding Plaintiff attorneys' fees, costs, interests, and expenses incurred in the prosecution of the action;

F.     Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants unlawful employment practices.


Dated:  New York, New York
        December 1, 2022

                              **PHILLIPS & ASSOCIATES,**
                              **ATTORNEYS AT LAW, PLLC**


                    By:    __/s/_____
                           Michelle A. Caiola, Esq.
                           Jonathan Goldhirsch, Esq.
                           *Attorneys for Plaintiff*
                           45 Broadway, Suite 430
                           New York, New York 10006
                           T: (212) 248-7431
                           F: (212) 901-2107
                           mcaiola@tpglaws.com
                           jgoldhirsch@tpglaws.com