USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 3/12/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WHITAKER,<br><br>      Plaintiff,<br><br>  -against-<br><br>AMAZON.COM SERVICES LLC, *et al.*,<br><br>      Defendants. | 22-cv-10222 (ALC)<br><br>**<u>ORDER</u>** |

**ANDREW L. CARTER, United States District Judge:**

  Plaintiff Russell "Angel" Whitaker ("Plaintiff") brought this action against Defendants Amazon.com Services LLC and JusJor Express LLC ("Defendants") violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*, the New York State Human Rights Law, New York Executive Law § 290, *et seq.*, and New York City Human Rights Law, Administrative Code of the City of New York § 8-107, *et seq*. *See generally* ECF No. 1 ("Compl."). The Court considers herein Defendants' motion to compel arbitration and stay the action. *See* ECF No. 27.

  For the reasons discussed below, Defendants' motions to compel arbitration and stay the action pending arbitration are **GRANTED**.

BACKGROUND

  **I.**  **Parties**

  Plaintiff Russell "Angel" Whitaker is a 24-year-old woman with Autism Spectrum Disorder ("ASD"). ECF No. 30 ("Opp.") at 1. Plaintiff was first diagnosed with a developmental disability at three years old and testing later confirmed she is autistic and has limited cognitive function and understanding. *Id.* at 17. Plaintiff has received vocational services and, while

presently unable to live independently, carries out daily tasks with the assistance of her mother. *Id.*

Defendant JusJor is a New York company that "provides local delivery services to online retailer Amazon." ECF No. 29 ("Mot.") at 1. JusJor employs associates to deliver packages on foot on behalf of Defendant Amazon.com Services LLC and hired Plaintiff as a walker on or about November 16, 2021. *Id.*

II.     **Factual Background**

   A.  **New Applicant Registration**

When hiring new associates, JusJor administrators create an electronic profile for the applicant using their name and email address as set forth in their application materials. *Id.* at 2. The system then generates an email to the applicant containing a link to begin the registration process. *Id.* The "from" line of the email states that it was sent from "Amazon Logistics" with address "no-reply@amazon.com," and the email's subject line states that a Delivery Service Partner ("DSP"), here JusJor, has invited the applicant "to deliver Amazon packages." ECF No. 28 ("Jean-Louis Decl.") at ¶ 4. Upon clicking the "Sign In" link in the body of the email, the applicant is sent to a landing page that states again that the DSP has invited the applicant to join their delivery company and prompts the applicant to create an Amazon user account. Mot. at 2. After these steps are completed, the applicant must then download the "Amazon Flex" app on their mobile device and log into it using their Amazon user account credentials. *Id.* The page directing the applicant to download the Amazon Flex app confirms again the name of the DSP for whom the applicant will be making deliveries. Jean-Louis Decl. at ¶ 9.

Once on the Flex app, the applicant must then complete further hiring documentation. *Id.* The second of the six necessary documents which the applicant must complete is an Arbitration Agreement. *Id.* Upon reaching this section, the screen displays the entire Agreement. *Id.* At the bottom of the Agreement text, the applicant can indicate their assent to the Agreement's terms by checking a box labeled "I Agree and Accept." *Id.* The applicant is not able to proceed through the registration documents without assenting to the arbitration provision. *Id.* at 3. The Flex app logs when the applicant continues past the Arbitration Agreement document and logs that information on Amazon servers. *Id.* Defendants have also submitted evidence that, according to their registration business records, Plaintiff clicked "I Agree and Accept" to the Arbitration terms on November 17, 2021 at 11:03 AM Pacific Time. ECF No. 34 ("Cantwell-Badyna Decl.") at ¶ 7.

Plaintiff confirms in her opposition filing that, upon completing an interview for the associate position on November 16, 2021, she received an email prompting her to complete the registration process as described through the Amazon Flex app. Opp at 9-10. Plaintiff states that she was asked to "download[] the Amazon flex account, complete[] an Amazon background check, and accept[] Amazon workplace policies." *Id.* On November 19, 2021, Plaintiff received an email from "amazonflex@amazon.com" thanking her "for completing all steps to join JusJorXpress to deliver packages on behalf of Amazon" and directing her to contact Defendant JusJor for next steps. *Id.* at 10.

### B. The Arbitration Agreement

The Arbitration Agreement states that "the employee and company agree that any covered claim (defined below), whether based in contract, tort, statute, common law, fraud, misrepresentation or any other legal or equitable theory, shall be submitted to individual binding

3

arbitration." Jean-Louis Decl., Ex. A. at 1. Covered claims are defined as "all past, current, and future grievances, disputes, claims, issues, or causes of action…under applicable federal, state or local laws, arising out of or relating to (a) Employee's application, hiring, hours worked, services provided, and/or employment with the Company or the termination thereof, and/or (b) a Company policy or practice, or the Company's relationship with or to a customer, vendor, or third party, including without limitation claims Employee may have against the Company and/or any Covered Parties, or that the Company may have against Employee." *Id.* "Covered Parties" include "clients of the Company or a Company entity" like Defendant Amazon.com Services LLC. *Id.* The Agreement also explicitly covers the following types of claims:

> "(i) Title VII of the Civil Rights Act of 1964 and similar state statutes; (ii) Age Discrimination in Employment Act and similar state statutes; (iii) Fair Labor Standards Act or similar state statutes; (iv) Family and Medical Leave Act or similar state statutes; (v) Americans with Disabilities Act or similar state statutes; (vi) injuries [the employee] believe[s] are attributable to the Company under theories of product liability, strict liability, intentional wrongdoing, gross negligence, negligence, or respondeat superior; (vii) actions or omissions of third parties [the employee] attribute[s] to the Company; (vii) claims brought pursuant to actual or alleged exceptions to the exclusive remedy provisions of state workers compensation laws; (ix) Consolidated Omnibus Budget Reconciliation Act of 1985; (x) federal and state antitrust law; (xi) issues regarding benefits, bonuses, wages, penalties, co-employment, or joint employment; (xii) contracts between [the employee] and the Company; (xiii) personal or emotional injury to [the employee] or [the employee's] family; (xiv) federal state, local, or municipal regulations, ordinances, or orders; (xv) any common law, or statutory law issues relating to discrimination by sex, race, age, national origin, sexual orientation, family or marital status, disability, medical condition, weight, dress, or religion or other characteristic protected by applicable law; (xvi) wrongful retaliation of any type, including retaliation related to workers' compensation laws or employee injury benefit plan actionable at law or equity; and (xvii) misappropriation of confidential information or other acts or omissions by [the employee]."

*Id.* The Arbitration Agreement does not explicitly state the identity of the "Company" bound by its terms.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") states that an agreement to arbitrate "shall be valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C § 2. The FAA sets "a liberal federal policy favoring arbitration agreements" and courts are tasked with "rigorously . . . enforc[ing] arbitration agreements." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (internal citation omitted). Relevant questions for consideration on such a motion to compel arbitration include: "(1) whether the parties are bound by a given arbitration clause, and (2) whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." *Kai Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 45 (E.D.N.Y. 2017) (quoting *VRG Linhas S.A. v. MatlinPatterson Glob. Opportunities Partners II L.P.*, 717 F.3d 322, 325 n.2 (2d Cir. 2013)) (cleaned up). The party moving to compel arbitration must "mak[e] a *prima facie* initial showing that an agreement to arbitrate existed." *Moton v. Maplebear Inc.*, 2016 U.S. Dist. LEXIS 17643, at *11 (S.D.N.Y. Feb. 9, 2016). If made, "the burden shifts to the party opposing arbitration to put the making of that agreement in issue." *Id*. The party opposing arbitrability then "bears the burden of showing that the agreement [is] inapplicable or invalid." *Id.* (citing *Harrington v. Atl. Sounding Co., Inc.*, 602 F.3d 113, 124 (2d Cir. 2010)).

In reviewing a motion to compel arbitration, "the court applies a standard similar to that applicable [to] a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). For this reason, "it is proper (and in fact necessary) to consider…extrinsic evidence when faced with a motion to compel arbitration." *BS Sun Shipping Monrovia v. Citgo Petroleum Corp.*, No. 06-cv-839 (HB), 2006 WL 2265041, at *3 n.6 (S.D.N.Y. Aug. 8, 2006) (citing *Sphere Drake Ins. Ltd. v. Clarendon Nat. Ins. Co.*, 263 F.3d 26, 32-33 (2d Cir. 2001)). "If the party seeking

5

arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial, but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995); *accord Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 113 (2d Cir. 2012) ("Allegations related to the question of whether parties formed a valid arbitration agreement…are evaluated to determine whether they raise a genuine issue of material fact that must be resolved by a fact-finder at trial."). "If the Court determines "that an arbitration agreement is valid and the claim before it is arbitrable, it must stay or dismiss further judicial proceedings and order the parties to arbitrate." *Patterson v. Raymours Furniture Co.*, 96 F. Supp. 3d 71, 75 (S.D.N.Y. 2015), *aff'd*, 659 F. App'x 40 (2d Cir. 2016) (citing *Nunez v. Citibank*, N.A., No. 08–CV–5398 (BSJ), 2009 WL 256107, *2 (S.D.N.Y. Feb. 3, 2009)).

## DISCUSSION

Defendants, through their presentation of the Arbitration Agreement's terms and affidavit evidence that Plaintiff signed the Agreement, have made out their *prima facie* case that the Parties are bound to arbitrate these claims. Plaintiff raises several arguments as to why she ought not be bound by the terms of the Arbitration Agreement. These are as follows: (1) the Agreement does not identify which Parties are bound by its terms, (2) there is insufficient evidence to establish that Plaintiff signed the Agreement, (3) the Agreement is voidable by reason of Plaintiff's lacking mental capacity, and (4) the Agreement is unlawfully broad and unenforceable. The Court considers each argument in turn.

I. **Parties Bound By The Arbitration Agreement**

Defendants have presented evidence through the sworn declaration of Davis Jean-Louis, JusJorXpress LLC's former owner, regarding the registration process by which JusJor hires and onboards new applicants into the Company. While the Arbitration Agreement itself does not expressly define to whom the operative phrase "Company" is referring, the plethora of communications sent to the Plaintiff make clear that the "Company" to be bound by the Arbitration alongside the applicant is Defendant JusJor. Defendant JusJor utilizes Amazon's DSP platform to complete the onboarding, and the registration protocol reminds applicants of the identity of their hiring DSP at multiple junctures. The DSP—in this case JusJor—is identified in the subject line of the initial registration email directing the applicant to sign into or create an Amazon account, in the top line of the account creation landing page, in the subsequent application invitation landing page, in the landing page directing the applicant to download the Amazon Flex app, and on the welcome page of the Amazon Flex App seen immediately after logging into the application. Jean-Louis Decl. at ¶¶ 4-5, 8-10. Citing generally to the same Declaration, Plaintiff acknowledges receiving the aforementioned email messages and prompts directing her to create an Amazon account, download the Amazon Flex app, and complete the required documentation. Opp. at 9-10.

II. **Plaintiff's Signature**

Defendants present to this Court two pieces of evidence supporting a finding that Defendant indicated her assent to the Arbitration Agreement. The first is an exhibit to the Jean-Louis declaration which the declarant avers is "[a] true and correct copy of the time and date stamped electronic signature confirmation." Jean-Louis Decl. at ¶ 20. That exhibit notes

7

Defendant JusJor's name, Plaintiff's name, and the date and time on which the arbitration agreement was purportedly "completed" (November 17, 2021 at 11:03 AM PST) and includes a unique transporter ID value. *Id.* at Ex. B. The second is in the subsequent declaration of Alexis Cantwell-Badyna, an Amazon employee who works on the DSP program. Cantwell-Badyna Decl. at ¶ 1. Declarant Cantwell-Badyna avers as well that Defendant Amazon's business records indicate that Plaintiff indicated her assent to the Agreement on November 17, 2021 at 11:03 AM Pacific Time.

Plaintiff argues that she "has no recollection of signing the Agreement, has no record of the agreement, and was not made aware of the existence of this Agreement until after commencing this claim" and argues that Defendants' evidence lack indicia of reliability supporting a finding that Plaintiff signed the Agreement. Opp. at 15. The Court notes that "[t]here is a conspicuous asymmetry in the evidence on point." *Reddick v. Hewlett-Packard Co.*, No. 1:20-cv-04597-LMM-RDC, 2021 U.S. Dist. LEXIS 212897, at *14 (N.D. Ga. May 20, 2021). Whereas Defendants present evidence establishing that all DSP applicants and hires were required to create individual Amazon accounts and complete the six registration documents on the Flex App in order to continue on with their candidacy, and that, as shown by business records kept in the ordinary course as represented under penalty of perjury by two of Defendants' employees, Plaintiff electronically accepted the Agreement, Plaintiff submits in her opposition filing and declaration that she did not recall signing the Agreement but did sign several of the other registration documents housed on the Flex application. Plaintiff's statements "that she cannot recall signing an agreement . . . fail[] to create a triable issue of fact" here, especially given the evidence

8

Defendants present supporting their factual assertions. *Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 51 (2d Cir. 2022).

### III.   Plaintiff's Capacity

New York law presumes the capacity to contract and the party asserting incapacity bears the burden of proof. *Pucilowski v. Spotify USA, Inc.*, 2022 U.S. Dist. LEXIS 49934, at *20 (S.D.N.Y. Mar. 21, 2022) (citing *Hewett v. Leblang*, 2012 U.S. Dist. LEXIS 93123, at *22 (S.D.N.Y. July 5, 2012)). To establish that a party lacked capacity to contract, the movant must show: "(1) that "the mind was so affected as to render him wholly and absolutely incompetent to comprehend and understand the nature of the transaction," and (2) that the other contracting party "knew or should have known of his condition." *Pucilowski v. Spotify USA, Inc.*, 2022 U.S. Dist. LEXIS 49934, at *20 (S.D.N.Y. Mar. 21, 2022) (citing *Washington v. NYC Med. Practice, P.C.*, No. 18-CV-9052 (PAC), 2021 U.S. Dist. LEXIS 44992, at *14 (S.D.N.Y. Mar. 10, 2021)). The burden to establish lacking capacity is "extremely heavy." *Washington*, 2021 U.S. Dist. LEXIS 44992 at *14.

As Plaintiff states, contracts are voided for lacking mental capacity where the movant possesses "a lack of comprehension or rational decisionmaking . . . [or an] inability to act in a reasonable manner." *Rivera v. Sovereign Bank,* 976 F.Supp. 2d 270 (E.D.N.Y. 2013). Plaintiff has not presented sufficient evidence to establish that her ASD caused her to so severely lack comprehension or decisionmaking capacity. To the contrary, Plaintiff represents to this Court that she has been successful in maintaining delivery employment over the past year. Opp. at 6. Curiously, Plaintiff does not allege that she lacked capacity to complete Defendants' other registration documentation which included Driver's License Verification and Background Check

9

forms. Opp. at 6, 9-10. Additionally, there is no indication that JusJor knew or should have known of any condition affecting her mental capacity. As such, Plaintiff has failed to meet her burden that she lacked mental capacity.

IV. **Arbitration Agreement's Breadth**

Plaintiff's final argument that the Arbitration Agreement us unlawfully broad is also unavailing. Plaintiff attempts to liken this Agreement to the one at issue in *Wexler v. AT&T Corp*. 211 F. Supp. 3d 500 (E.D.N.Y. 2016). The Arbitration Agreement in that case required AT&T wireless phone service customers to arbitrate claims arising out of or relating to any claims "whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory." *Id.* at 501. Defendant AT&T sought to enforce this arbitration agreement against the Plaintiff despite the fact that her complaint raised claims completely unrelated to her wireless phone service plan. *Id.* In denying the defendant's motion to compel arbitration, the court distinguished between "agreements traditionally classified as broad because they cover all disputes arising out of or relating to the underlying agreement" and those "not limited to disputes concerning its service agreement." *Id.* at 502 (citing *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 225 (2d Cir. 2001). The former, the *Wexler* Court found, are permissible, whereas the latter ought not stand.

The language of the Arbitration Agreement in this case falls squarely into the "traditionally broad" and enforceable category. *Id.* While the Agreement states that "the employee and company agree that any covered claim (defined below), whether based in contract, tort, statute, common law, fraud, misrepresentation or any other legal or equitable theory, shall be submitted to individual binding arbitration" and applies to any "Company policy or practice, or the Company's

10

relationship with or to a customer, vendor, or third party, including without limitation claims Employee may have against the Company and/or any Covered Parties," it is also limited in this case to a dispute "arising out of or relating to (a) Employee's application…and/or employment with the Company or the termination thereof." Jean-Louis Decl., Ex. A at 1.

## CONCLUSION

For the foregoing reasons, the Court finds that Defendants have made out their *prima facie* case in support of arbitration which Plaintiff has failed to rebut. As such, Defendants' motion to compel arbitration and stay the case are **GRANTED**.

**SO ORDERED.**

**Dated:** **March 12, 2024**
**New York, New York**

**ANDREW L. CARTER, JR.**
**United States District Judge**